# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| **DAVID HARPER,** | **Case No.: 1:21-cv-00197-CRK** |
| **Plaintiff,** | **OPINION AND ORDER RE:** |
| **v.** | **MOTION TO DISMISS** |
| **UNITED STATES DEPARTMENT OF THE INTERIOR ET AL.,** | |
| **Defendants.** | |

## I.    INTRODUCTION

Before the Court is defendants United States Department of the Interior's ("Department"), Debra Haaland's, Michael Nedd's and Kevin Graham's (collectively, "Defendants") motion to dismiss plaintiff David Harper's complaint.  Mot. to Dismiss Pl.'s Compl., July 30, 2021, ECF No. 7 ("Mot. to Dismiss").  Harper, a Department employee in the Bureau of Land Management ("BLM") and a former BLM law enforcement officer ("LEO"), asserts four claims: (1) violation of his Fifth Amendment right to due process under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971);[1] (2) defamation per se; (3) negligent supervision; and (4) negligent training.  Compl. ¶¶ 119–49.  In support of the four

---

[1] Harper's Complaint also cites 42 U.S.C. § 1983 as a basis for recovery for alleged constitutional violations, see Compl., ¶¶ 9–10, May 4, 2021, ECF No. 1; however, that statute applies to state, not federal, officials, and, in any event, Harper abandons that theory in his opposition.  Pl.'s Objection and Memo. in Resp. to [Mot. to Dismiss], Sept. 17, 2021, ECF No. 18 ("Pl. Br.") at 8–9.

causes of action, Harper alleges that various high-level Department employees conspired to wrongfully suspend and permanently reassign him to a non-LEO position and to deny him due process by taking unauthorized and ultra vires actions to interfere with the initial disciplinary process and Harper's administrative grievance.  Id. ¶¶ 120, 127, and 136.  Defendants move to dismiss all claims on the grounds that (1) Harper's Bivens claim is preempted by the Civil Service Reform Act of 1978, Pub. L. 95–454, 92 Stat. 1111 (1978), codified in Title 5 of the U.S. Code ("CSRA"); (2) Harper failed to exhaust his administrative remedies, a prerequisite for bringing claims under the Federal Tort Claims Act, Pub. L. 79–601, 60 Stat. 812, 28 U.S.C. § 2671, et seq. ("FTCA"), which permits private parties to bring certain tort claims against the United States and its agencies; (3) the FTCA excludes Harper's tort claims; (4) Harper failed to allege sufficient facts to state any of the tort claims; and (5) the individual defendants are entitled to qualified immunity against Harper's Bivens claim.  Memo. in Supp. of Mot. to Dismiss Pl.'s Compl., 1–2, July 30, 2021, ECF No. 7-1 ("Def. Br.").  For the reasons that follow, the Court grants in part and denies in part Defendants' motion to dismiss.

## II.     BACKGROUND[2]

On June 12, 2018, Special Agent ("SA") Shillingford of the Department's Office of the Inspector General ("OIG") interviewed Harper as part of OIG's investigation of sexual harassment allegations against the then Associate District Manager for BLM's

---

[2] The facts set forth in the background section are taken from Harper's Complaint and certain documents discussed in Harper's Complaint and are assumed to be true for the purposes of this motion.  See sections III(C)–(D), infra, for an explanation of the documents on which the Court relies in deciding this motion.

**OPINION AND ORDER - 2**

Southern Nevada District.  Compl. ¶¶ 13, 32.  At the time of the interview, Plaintiff worked as a Law Enforcement Ranger in BLM's Twin Falls District.  Id. ¶ 13.  Neither SA Shillingford nor anyone else at OIG indicated that Harper lacked candor during the interview, and OIG did not investigate Harper in connection with his answers during the interview.  Id. ¶¶ 31, 98.  Nonetheless, on February 13, 2019, defendant Graham, a BLM Employee Relations National Policy Specialist at the time, sent Tammy Bergbauer, the "proposing official," a draft proposal to suspend Harper for 14 days.  Id. ¶ 15.  Graham further instructed Bergbauer to adopt the proposal as her own and review the evidence supporting the draft proposal.  Id.  Several weeks later, Graham emailed Robert Casias, who had replaced Bergbauer as the proposing official, an updated proposal to remove Harper.  Id. ¶ 16.  Graham emailed Casias on March 25, 2019, asking Casias to "adopt this proposal as your own."  Id. ¶ 17.

Graham further stated in an email to Mary Huber-Thompson, a BLM Human Relations Specialist and Labor Relations/Assistant Ethics Counselor for the BLM Idaho State Office, that the proposed removal had been "taken over by the BLM front office."  Id. ¶¶ 18–19; see also Admin. Inquiry David Harper Grievance Prelim. Report, Attach. 2, Aug. 30, 2019, ECF Nos. 19-3 and 19-4 ("Hedrick Report").  Two days later, Casias issued a document entitled "Advanced Written Notice of Proposed Removal" (the "Proposal"), which proposed that Harper be removed based on his purported lack of candor during the OIG interview with SA Shillingford.  Compl. ¶¶ 22, 30.  None of Harper's direct managers or supervisors were involved in drafting the Proposal.  Id. ¶ 23.  Harper alleges that defendant Nedd directed the Proposal because Graham stated that William Woody, the director of BLM's Office of Law

Enforcement and Security at the time, was not involved in drafting the Proposal, and the only two officials superior to Woody were Nedd and William Pendley, the Deputy Director of Policy and Programs. Id. ¶¶ 18–19, 25–27.

Harper, through his attorney, submitted a written response to the Proposal ("Response to Proposal"), id. ¶¶ 32–33, 43–50, and, on May 2, 2019, Harper and his attorney participated in a telephonic hearing with Graham and Barbara Eggers, the deciding official. Id. ¶¶ 34–40. Harper alleges that he was told he would have one hour to present his defense; however, Harper's attorney and Graham argued for approximately 20 minutes after Graham stated that Harper's attorney would not be permitted to speak during the hearing. Id. ¶¶ 35, 37–38. Thus, Harper's oral response to the Proposal was limited to approximately 30 minutes. Id. ¶ 39. On May 21, 2019, Eggers issued her decision (the "Eggers Decision"), in which she found Harper lacked candor during his interview with SA Shillingford, suspended Harper for 14 days without pay, and permanently reassigned him to a non-law-enforcement position. Id. ¶¶ 41–42.

The next day, Harper received a letter stating that he was being reassigned to a non-law-enforcement position and his annual salary would decrease by approximately $2,000 (the "First Reassignment Letter"). Id. ¶¶ 51–52. The First Reassignment Letter also stated that Harper could appeal the Eggers Decision to the Merit Systems Protection Board ("MSPB"). Id. ¶ 51. However, on June 5, 2019, Harper received a second letter indicating that he was receiving a raise, not a pay cut, and did not mention any right to appeal the Eggers Decision to the MSPB

**OPINION AND ORDER - 4**

("Second Reassignment Letter"). Id. ¶¶ 53–54. Defendant Graham issued the two reassignment letters. Id. ¶ 57.

The Second Reassignment Letter notwithstanding, Harper appealed the Eggers Decision to the MSPB, but the MSPB dismissed his appeal on the grounds that it lacked jurisdiction over his claim. Id. ¶ 56. After the MSPB denied his appeal, Harper filed an administrative grievance with the BLM Idaho State Office in a further attempt to appeal the Eggers Decision (the "Grievance"). Id. ¶ 58. On July 17, 2019, BLM Idaho State Director John Ruhs, the deciding official for the Grievance, see id. ¶¶ 59, 65, and 105, appointed Howard Hedrick to investigate the Grievance. Id. ¶60. Hedrick investigated the Grievance and, on August 30, 2019, issued a preliminary report finding that there was no credible evidence to sustain the charge of lack of candor against Harper and that the actions of the BLM officials who initiated and conducted the investigation into Harper resulting in the Proposal and the Decision were "completely lacking in ethical behavior and morally wrong." Id. ¶¶ 61–63; see also Hedrick Report. However, approximately two weeks later, Ruhs met with Nedd in Washington, D.C. Compl. ¶ 64. On September 17, 2019, Nedd issued a memorandum to Ruhs directing Ruhs and Hedrick to stop all action related to the Grievance and appointed himself as the new deciding official in place of Ruhs. Id. ¶¶ 65–67. Harper alleges that Ruhs stated that prior to Nedd's self-appointment as deciding official over the Grievance, Ruhs was going to overturn the Eggers Decision based on the Hedrick Report. Id. ¶¶ 104–05.

After Nedd replaced Ruhs as the deciding official for the Grievance, Harper requested a copy of the Hedrick Report, but alleges that he was told he had to request

**OPINION AND ORDER - 5**

it pursuant to the Freedom of Information Act ("FOIA"). Id. ¶ 72. Harper made a FOIA request for the Hedrick Report on October 2, 2019 but did not receive any documents related to the investigation of his Grievance until April 2020, after he hired an attorney and filed a FOIA lawsuit to obtain the documents that BLM had admitted to possessing but refused to turn over. Id. ¶¶ 73, 80–84. Nevertheless, Nedd's Grievance investigation proceeded, and, on October 29, 2019, Nedd provided Harper with 30 minutes to make an oral presentation to Nedd. Id. ¶ 74. On November 19, 2019, Nedd issued his decision denying Harper's Grievance (the "Grievance Decision"). Id. ¶¶ 75–79. The Grievance Decision did not mention the Hedrick Report. Id. ¶ 76. The Grievance Decision stated that Harper provided no evidence to contradict the findings of the Eggers Decision and that the Grievance Decision was final and not appealable. Id. ¶¶ 76, 78. However, the Grievance Decision stated that Harper was eligible to apply for future law enforcement job openings. Id. ¶ 79.

After receiving the Grievance investigation documents in April 2020, Harper attempted to file an appeal of the Grievance Decision addressed to the Deputy Secretary of the Interior and other Department human resources officials (the "DOI Appeal"). Id. ¶ 107. The DOI Appeal was denied on September 14, 2020. Id. ¶ 108. The Department's Director of the Office of Human Capital and Chief Human Capital Officer, Jennifer Ackerman, stated that the BLM's administrative grievance procedures "do[] not permit further appeal of or complaint on Step 2 administrative grievance decisions." See Decl. in Supp. of Opp'n to Defs.' Mot. to Dismiss, Sept. 17, 2021, ECF No. 19-1 ("Harper Decl."), Ex. 6, 124–25, ECF No. 19-5 ("DOI Response to

**OPINION AND ORDER - 6**

Appeal").  The DOI Response to Appeal also stated, without further explanation, that Ackerman found that BLM had followed the appropriate procedures in deciding the Grievance.  Compl. ¶ 108.

In May 2020, while the DOI Appeal was pending, Harper applied for a law enforcement position in Twin Falls, Idaho.  Id. ¶ 109.  Despite allegedly being notified that he was referred to the hiring official as the best qualified applicant in June 2020, being offered a tentative job offer in July 2020, accepting a final job offer on August 11, 2020, and passing a BLM National Operations Center ("NOC") background check in August 2020, Harper alleges he was told that he was being subjected to a second background check and that defendant Nedd had "gotten involved" in the hiring process.  Id. ¶¶ 110–114.  Both Nedd and Graham called the NOC and the Idaho State Director's Office in connection with Harper's application.  Id. ¶ 114.  On August 21, 2020, BLM rescinded the job offer as a result of an "OPR report" that caused Harper to fail the second background check.  Id. ¶ 115.  Harper unsuccessfully applied to other law enforcement positions since August 2020.  Id. ¶ 117.

Harper filed the Complaint on May 4, 2021.  See id.  Defendants filed their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure[3] for lack of subject matter jurisdiction and for failure to state a claim, respectively.  Mot. to Dismiss at 1–2.  The parties have fully briefed the motion.  See Def. Br.; Pl. Br.; Harper Decl. and Exhibits, ECF Nos. 19-2–19-5;[4] Reply to Pl.'s

---

[3] The Federal Rules of Civil Procedure are referred to collectively as the "Rules" and individually as "Rule."

[4] Defendants objected to the Harper Decl. on numerous grounds, see Defendants' Objections to [Harper Decl.], Oct. 1, 2021, ECF No. 21) ("Objections to Harper Decl."),

Objection and Memo. in Resp. to Defs.' Mot. to Dismiss Pl.'s Compl., Oct. 1, 2021, ECF No. 20 ("Def. Reply").

### III.    STANDARD OF REVIEW

### A.    Subject Matter Jurisdiction

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause of action lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (internal citations omitted)).  A challenge to subject matter jurisdiction can be facial or factual.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial challenge to the Court's subject matter jurisdiction "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id.  A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749

---

one of which was that the Harper Decl. was unsworn and did not comply with the requirements of 28 U.S.C. § 1746.  Objections to Harper Decl. ¶ 1.  Harper then filed a motion to supplement evidence, see Mot. to Supp. Evid., Oct. 6, 2021, ECF No. 22, and a new declaration made under penalty of perjury.  See Pl.'s Decl. Concerning Evid. and Statements Submitted in Supp. of Opp'n to [Mot. to Dismiss], Oct. 6, 2021, ECF No. 22-1.  Defendants did not oppose Harper's motion to the extent that it sought to bring the Harper Decl. into compliance with 28 U.S.C. § 1746.  See Resp. to Pl.'s Mot. to Supplement Evid., Oct. 13, 2021, ECF No. 23.  The Court granted Harper's motion.  See Order re: Mot. to Supplement Evid., Oct. 14, 2021, ECF No. 24.

F.3d 1117, 1121 (9th Cir. 2014). A defendant making a factual challenge to subject matter jurisdiction "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air, 373 F.3d at 1039. When considering a factual challenge, the Court "need not presume the truthfulness of the plaintiffs' allegations." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

Whether a challenge to subject matter jurisdiction is facial or factual depends on the defendant's arguments and whether it relies on affidavits or other evidence in support of its motion. Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Here, Defendants argue that the facts in Harper's complaint are insufficient to confer subject matter jurisdiction on this Court because (1) Harper did not exhaust his administrative remedies so the Court does not have jurisdiction over the FTCA claims; (2) the FTCA excludes Harper's tort claims; and (3) the Bivens claim is preempted by the CSRA. Def. Br. at 6–8, 9–11. Defendants do not rely on any affidavits or other evidence in support of their motion. See Mot. to Dismiss. Therefore, Defendants' Rule 12(b)(1) challenge to the Court's subject matter jurisdiction is a facial, not a factual, challenge, and the Court presumes the truthfulness of the allegations in the Complaint and draws every reasonable inference in Harper's favor. See Leite, 749 F.3d at 1121.

### B.   Failure to State a Claim

Defendants also move to dismiss the Complaint under Rule 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal, not factual, sufficiency of

**OPINION AND ORDER – 9**

the complaint.  <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1241–42 (9th Cir. 2011);

<u>see also</u> <u>City of Oakland v. BP PLC</u>, 969 F.3d 895, 910 (9th Cir. 2020).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556

U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570

(2007)).  A claim is plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Id.</u>  Although a complaint does not need detailed factual

allegations, the plaintiff must provide more than "labels and conclusions" and cannot

rely solely on a recitation of the elements of the cause of action.  <u>Twombly</u>, 550 U.S.

at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  <u>Iqbal</u>, 556 U.S. at 678.  Nonetheless, the facts

alleged in the complaint must be accepted as true and all reasonable inferences must

be drawn in the plaintiff's favor.  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

The court will dismiss a complaint without leave to amend only when the deficiencies

in the complaint could not be cured by amendment.  <u>Jackson v. Carey</u>, 353 F.3d 750,

758 (9th Cir. 2003).

### C.   Documents Outside the Complaint

If a defendant attempts to rely on facts not in the complaint in support of a

motion to dismiss, the court may treat the motion as one for summary judgment.  Fed.

R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56").  Nonetheless, on a motion to dismiss

(as opposed to a motion for summary judgment), it is improper for a plaintiff to submit an affidavit or declaration in order to assert new facts not included in the complaint. U.S. v. Ritchie, 342 F.3d 903, 908–09 (9th Cir. 2003). The proper vehicle for asserting new facts is via an amended complaint. Reno v. Nielson, 424 F. Supp. 3d 1045, 1053 (D. Haw. Dec. 17, 2019). An exception to this rule is that the court can consider documents that were attached to the complaint, incorporated by reference into the complaint or were discussed in the complaint to the extent that it is reasonable to treat them as though they were made part of the complaint, form the basis of the complaint, or of which the Court can take judicial notice. Ritchie, 342 F.3d at 907–08; Ceperich v. Countrywide Home Loans, Inc., 2013 WL 654362, at *2 (D. Idaho Jan. 15, 2013) (unreported); see also Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002).

Here, Defendants did not rely on affidavits or materials outside of the complaint in support of their motion to dismiss; Defendants solely challenged the legal sufficiency of the Complaint. See Mot. to Dismiss. Nonetheless, Harper submitted a lengthy Declaration with over 100 pages of documents attached as part of his opposition to the Motion to Dismiss. See Harper Decl. and Exhibits. Although Defendants do not ask the Court to treat this as a motion for summary judgment or object to the Court's consideration of the Declaration and attachments (except to the limited extent of the objections asserted in their Objections to Harper Decl., see Def. Reply), the Court is bound by the Federal Rules of Civil Procedure and Ninth Circuit precedent that govern the Court's analysis of a motion to dismiss.

**OPINION AND ORDER - 11**

In light of the factual issues specifically alleged in the Complaint and raised by the filings in this proceeding thus far, the Court declines to treat this as a motion for summary judgment pursuant to Rule 12(d).  Therefore, the Court will disregard all factual allegations in the Harper Decl. that are not contained in the Complaint, in any document sufficiently described in the Complaint which the Court will treat as part of the Complaint, or of which the Court may take judicial notice.[5]  Ritchie, 342 F.3d at 907–08.  The Court will also disregard any legal arguments set forth in the Harper Decl.  See Flintkote Co. v. Gen. Acc. Assur. Co., 410 F. Supp. 2d 875, 885 (N.D. Cal. Jan. 19, 2006) (legal argument and opinion in party affidavit will be disregarded); J&J Sports Productions, Inc. v. Vazquez, 2012 WL 3025916, at *1 n.3 (N.D. Cal. July 24, 2012) (unreported) (same); see also Wright v. Am.'s Bull. Newspaper Corp., 2011 WL 2213722 at *7–8 (D. Or. May 5, 2011) (unreported) (discussing difference between legal memorandum and affidavit).

The Court concludes that the following documents were sufficiently described in the Complaint that it is reasonable to treat them as part of the Complaint:

1) Hedrick Report, see Compl. ¶¶ 61–63, 70–73, 76, 80–82, 84–99, 106, and 120 (p)–(q).

2) Proposal, see id. ¶¶ 15–31, 91–93, and 120(b), (k)–(n);

3) Response to Proposal, see id.  ¶¶ 32–33, 43–50

4) Eggers Decision, see id.  ¶¶ 41–42, 49, and 120(l)–(n);

---

[5] Because the Court declines to consider the factual allegations in the Harper Decl. that are not also in the Complaint and documents not sufficiently described in the Complaint, the Court does not address Defendants' Objections to Harper Decl. to the same extent.  To the extent that Defendants object to factual allegations in the Complaint, those objections are improper on a motion to dismiss and are denied.

**OPINION AND ORDER - 12**

5) First and Second Reassignment Letters, <u>see</u> <u>id.</u> ¶¶ 51–57;

6) Grievance Decision, <u>see</u> <u>id.</u> ¶¶ 70, 75–79, and 120(q);

7) Emails between Kevin Graham, Tammy Bergbauer, Robert Casias, and Mary Huber Thompson, <u>see</u> <u>id.</u> ¶¶ 15–22, 24–25, 93, and 120(a)–(d), (k); and

8) DOI Response to Appeal, <u>see</u> <u>id.</u> ¶ 108.

The Court will also take judicial notice of the Department's Department Manual, which sets forth the Department's administrative grievance procedures, and to which Harper's Complaint refers repeatedly. <u>See, e.g.</u>, <u>id.</u> ¶¶ 68–69, 120. The Department Manual is a public document, the authenticity of which cannot be reasonably questioned. <u>See</u> Fed. R. Evid. 201(b); <u>see also</u> <u>Ritchie</u>, 342 F.3d at 908–09.

### D. Defendants' Objections to the Hedrick Report

Defendants raise several objections to the Hedrick Report, none of which is availing. Objections to Harper Decl. ¶¶ 2–4. First, Defendants assert that the Hedrick Report is "inadmissible hearsay" pursuant to Federal Rule of Evidence 802. <u>Id.</u> ¶ 2. Defendants' assertion is incorrect. Federal Rule of Evidence 801(d) sets forth certain statements that are not hearsay even though the statement in question would otherwise meet the requirements of hearsay and would therefore be inadmissible.[6] Fed. R. Evid. 801(d). As relevant here, the Federal Rules of Evidence provide that if

The statement is offered against an opposing party and:

(A)     was made by the party in an individual or representative capacity;

---

[6] The Hedrick Report is arguably not even hearsay to the extent that it is offered not to prove the truth of its contents but as evidence that the Department produced the Hedrick Report in response to Harper's Grievance and then suppressed it after Hedrick submitted his initial findings. <u>See</u> Fed. R. Evid. 801(c)(2). In any event, the Hedrick Report clearly falls under the enumerated exceptions to the hearsay rule, as set forth below.

(B)     is one the party manifested that it adopted or believed to be true;

(C)     was made by a person whom the party authorized to make a statement on the subject; [or]

(D)     was made by the party's agent or employee on a matter within the scope of that relationship while it existed.

Fed. R. Evid. 801(c)(2)(A)–(D).

The Hedrick Report arguably meets any one of those exceptions but is indisputably encompassed by (C) and (D). The Hedrick Report contains a document on Department letterhead from and signed by John F. Ruhs, BLM's Idaho State Director, appointing Hedrick to investigate Harper's Grievance. Hedrick Report, Attach. 4. Thus, Hedrick was an employee acting within the scope of his employment and was authorized to make the statements in the Hedrick Report. The Hedrick Report is therefore not hearsay and Defendants' first objection is overruled.

Next, Defendants assert that the Hedrick Report "has not been properly authenticated as Plaintiff has not provided sufficient evidence to show that the report is what he claims it is." Objections to Harper Decl. ¶ 3 (citing Fed. R. Evid. 901). Federal Rule of Evidence 901(a) provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Federal Rule of Evidence 901(b) then gives examples, though not an exhaustive list, of evidence that satisfy the authentication requirement set forth in Federal Rule of Evidence 901(a). Fed. R. Evid. 901(b). Relevant here are Federal Rules of Evidence 901(b)(1) and (7).

**OPINION AND ORDER - 14**

Federal Rule of Evidence 901(b)(1) states that testimony by a witness with knowledge that an item is what it is claimed to be sufficiently authenticates that item.  Harper alleges that he participated in, and was kept informed of the status of, the investigation of the Grievance.  Compl. ¶¶ 59, 65.  Harper further alleges that he requested a copy of the Hedrick Report sometime prior to October 2, 2019 and made a FOIA request for the Hedrick Report on October 2, 2019.  Id. ¶¶ 72–73.  Harper further alleges that BLM acknowledged the existence of the Hedrick Report in November 2019, and that he filed a FOIA lawsuit to obtain a copy of the Hedrick Report and ultimately received a copy of the Hedrick Report pursuant to that lawsuit in April 2020.  Id. ¶¶ 80–84.  Thus, Harper has sufficiently alleged that he has personal knowledge of the Hedrick Report.

Moreover, Harper's allegations authenticate the Hedrick Report under Federal Rule of Evidence 901(b)(7), as the Hedrick Report was "filed in a public office as authorized by law," or at least is "a purported public record or statement [] from the office where items of this kind are kept."  Fed. R. Evid. 901(b)(7)(A)–(B). Furthermore, Federal Rule of Evidence 902(5) provides that "a book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating. Fed. R. Evid. 902(5).

Finally, Federal Rule of Evidence 901 requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.  There is no bright-line rule that Harper must meet here.  Given Harper's allegations, the documents he provided, and the fact that Defendants do not assert that the Hedrick

Report is inauthentic (only that Harper has allegedly not properly authenticated it), Defendants' second objection to the Hedrick Report is overruled.

Lastly, Defendants object to the Hedrick Report because it is "preliminary" and thus it is purportedly unreliable and irrelevant and should not be admitted under Federal Rule of Evidence 402, which states that "irrelevant evidence is not admissible." Objections to Harper Decl. ¶ 4; Fed. R. Evid. 402. Federal Rule of Evidence 401 states that "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Harper asserts that after reading the Hedrick Report, Nedd, the Deputy Director of Operations at BLM, prevented Hedrick from continuing his investigation or issuing a final report by improperly and without proper authorization assuming jurisdiction over Harper's grievance as the deciding official. Compl. ¶¶ 62–69. Harper claims that Nedd's actions in connection with the Hedrick Report were taken with the objective of covering up the improper adverse action initially taken against Harper in connection with Harper's responses during his interview with SA Shillingford. Id. ¶¶ 70–78.

Given these allegations, which must be accepted as true at this stage of the proceeding, the Hedrick Report appears to be extremely relevant. The fact that it is "preliminary" is only because Hedrick was allegedly improperly forced to end his investigation. There is nothing in any of the papers before the Court that would lead to the conclusion that a "final" report would be substantially different than the preliminary one. The Defendants' third objection is overruled.

**OPINION AND ORDER - 16**

## IV.    DISCUSSION

Harper's Complaint alleges he is entitled to relief on four claims: (1) violation of his Fifth Amendment right to due process under <u>Bivens</u> (Count I); (2) defamation <u>per se</u> (Count II); (3) negligent supervision (Count III); and (4) negligent training (Count IV).  Compl. ¶¶ 119–49.  Defendants assert various legal theories pursuant to which they argue that the Complaint should be dismissed in its entirety.  Defendants contend that Count I should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Harper's <u>Bivens</u> claim is preempted by the CSRA.  Def. Br. at 9–11.  Defendants further contend that the <u>Bivens</u> claim should be dismissed because Graham and Nedd are entitled to qualified immunity, a complete defense as a matter of law.  <u>Id.</u> at 12–14.  Defendants next argue that Counts II–IV should be dismissed for lack of subject matter jurisdiction because Harper does not allege that he exhausted his administrative remedies, a condition precedent to bringing claims under the FTCA.  <u>Id.</u> at 7.  Similarly, Defendants contend that the Court lacks subject matter jurisdiction over Count II pursuant to the FTCA's exclusion of intentional torts and over Counts III and IV pursuant to the discretionary function exception to the FTCA.  <u>Id.</u> at 7–8; <u>see</u> 28 U.S.C. § 2680(a), (h).  Finally, Defendants assert that even if the Court has subject matter jurisdiction over Counts II–IV, Harper has failed to allege facts sufficient to state a claim for defamation, negligent supervision, or negligent training, so Counts II–IV should be dismissed pursuant to Rule 12(b)(6).  <u>Id.</u> at 8–9.  For the following reasons, Defendants' motion is denied with respect to Count I (<u>Bivens</u>) and Count II (defamation <u>per se</u>).  Count III (negligent supervision) and Count IV (negligent training) are dismissed without prejudice.

**OPINION AND ORDER - 17**

A.     **Bivens** Claim

Harper's <u>Bivens</u> claim is that Defendants took a series of unauthorized and <u>ultra vires</u> actions that corrupted the remedial processes set forth in the CSRA in violation of his Fifth Amendment right to due process.  Compl. ¶¶ 120–26; Pl. Br. at 8.  Harper seeks both monetary damages under <u>Bivens</u> and equitable relief.  Compl. ¶¶ 123–26, Prayer for Relief.  Defendants argue that Harper complains of "personnel actions," for which the CSRA provides the exclusive remedy and therefore preempts Harper's <u>Bivens</u> claim for damages.  Def. Br. at 10–11.  The Court concludes that Harper does not complain of personnel actions, but rather that Defendants' alleged <u>ultra vires</u> actions deprived Harper of the exact process that the CSRA provides.  Further, Harper's claims for equitable relief present a federal question that is not precluded by the CSRA and can be addressed by this Court pursuant to 28 U.S.C. § 1331.

In <u>Bivens</u>, the Supreme Court held that Bivens was entitled to prosecute an action for damages against federal officers who had allegedly violated Bivens' Fourth Amendment rights by conducting an illegal search and arrest without probable cause. <u>Bivens</u>, 403 U.S. at 389.  The Supreme Court subsequently elucidated that "the decision in <u>Bivens</u> established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official."  <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).  Thus, <u>Bivens</u> and its early progeny recognized an implied right of action to collect damages for violations of constitutional rights by federal officers acting under color of law.

Bivens, 403 U.S. at 389; see also Davis v. Passman, 442 U.S. 228, 234 (1979).  The Supreme Court recognized Bivens claims for violations of the Fourth, Fifth, and Eighth Amendments.  See Bivens, 403 U.S. 388 (Fourth Amendment); Davis, 442 U.S. 228 (Fifth Amendment); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment).

However, the Supreme Court has since limited the availability of Bivens claims.  First, in Bush v. Lucas, the Supreme Court denied the plaintiff the right to bring a Bivens claim for alleged violations of his First Amendment rights by his supervisors at NASA.  462 U.S. 367, 368–73 (1983).  The Bush court held that the plaintiff's claims were precluded by the CSRA, which provided a complete remedy. Id. at 368.  Then, in Schweiker v. Chilicky, the Supreme Court held that a Bivens action was unavailable to a plaintiff who alleged that his Fifth Amendment due process rights were violated when his social security disability rights were wrongfully terminated.  487 U.S. 412, 417–19, 425 (1988).  The Chilicky court held that Bivens claims are unavailable where the design of a government program suggests that Congress considered the harm and provided mechanisms to address constitutional violations.  Id. at 425–28.  "When the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies."  Id. at 423.  The Ninth Circuit interpreted this precedent as requiring courts to make an inquiry into whether Congress' omission of a remedy for an alleged constitutional violation was inadvertent, rather than whether Congress provided meaningful and adequate remedies.  Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir. 1989).

**OPINION AND ORDER - 19**

The Supreme Court directed that extending <u>Bivens</u> beyond the three situations in which the Supreme Court already recognizes <u>Bivens</u> claims is "disfavored." <u>Iqbal</u>, 556 U.S. at 675. A new context arises if "[the claim] implicates a different constitutional right; if judicial precedents provide a less meaningful guide for official conduct; or if there are potential special factors that were not considered in previous <u>Bivens</u> cases." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1864 (2017). In <u>Hernandez v. Mesa</u>, Justice Alito noted that "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under <u>Bivens</u>." 140 S. Ct. 735, 743 (2020). Nonetheless, the Supreme Court has not stated that <u>Bivens</u> may not be extended under any circumstances. <u>See United States v. Fausto</u>, 484 U.S. 439, 455 (1988) (Blackmun, J., concurring) (the CSRA does not impliedly repeal "the courts' common-law power to vindicate constitutional rights"); <u>see also Am. Fed'n of Gov't Emps. Loc. 1 v. Stone</u>, 502 F.3d 1027, 1036–39 (9th Cir. 2007) (holding that the CSRA does not preclude actions seeking equitable relief for constitutional violations). Instead, there is a two-part test for courts to employ when deciding whether a <u>Bivens</u> claim may proceed in a new context.[7] <u>See Wilkie v. Robbins</u>, 551 U.S. 537 (2007). The first question the court must answer is "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from

---

[7] Although the Supreme Court has recognized a <u>Bivens</u> claim for violations of Fifth Amendment due process, that claim alleged discrimination. <u>Davis</u>, 442 U.S. at 231–34. Therefore, Harper's <u>Bivens</u> claim is arguably not one previously recognized and can be said to arise in a new context. <u>See Abbasi</u>, 137 S. Ct. at 1864 (noting that although the case before the court significantly paralleled a prior claim of prisoner mistreatment, "even a modest extension is still an extension"). It is unnecessary to decide if Harper's claim is a "modest" extension as, even if it is, the claim is addressable under <u>Bivens</u> as explained below.

**OPINION AND ORDER - 20**

providing a new and freestanding remedy in damages." Id. at 550. The second prong requires that a court analyze "any special factors counselling hesitation before authorizing a new kind of federal litigation," even in the absence of an alternative remedy. Id.

In the context of the CSRA, which has been held to be a special factor counseling against recognizing a new Bivens claim, see Saul v. United States, 928 F.2d 829, 840 (9th Cir. 1991), the Ninth Circuit has stated,

> [T]he CSRA precludes even those Bivens claims for which the act prescribes no alternative remedy. The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights.

Id. The relevant inquiry is whether the actions of which a plaintiff complains are "personnel actions" as defined in the CSRA. Collins v. Bender, 195 F.3d 1076, 1078 (9th Cir. 1999). Although "[w]hen allegedly unconstitutional conduct falls within the broad confines of the CSRA, courts lack jurisdiction to hear a Bivens action based on the conduct," the CSRA does not preclude non-personnel actions taken by federal employees against their subordinates. Id. at 1078, 1080 (holding that illegal search of employee's home was not a personnel action so Bivens claim was not precluded).

Harper alleges that Department employees, including Graham and Nedd, conspired to remove him from his position as a BLM LEO on charges that a subsequent investigation found to be supported by "no credible evidence." Compl. ¶¶ 15–23, 31–40, 49, and 63. Harper further alleges that Defendants violated multiple BLM policies and federal regulations in initiating and prosecuting the Proposal and the Eggers Decision. Id. ¶ 120(a)–(n). Those allegations amount to alleged violations

**OPINION AND ORDER - 21**

of Harper's constitutional rights resulting in a suspension and removal, which constitute personnel actions under the CSRA. See 5 U.S.C. § 2302(a)(2)(iii)–(iv), (xii). If that was all Harper complained of, the CSRA would preclude any right to relief under Bivens; however, Harper alleges that he sought multiple avenues of relief provided by the CSRA and each time the process was corrupted by further violations of BLM policy and federal regulations that deprived Harper of the process due to him under the Constitution and the CSRA. Id. ¶ 120(a)–(r).

Specifically, Harper alleges that he filed an appeal with MSPB based on the Eggers Decision and the First Reassignment Letter, but that Defendants issued the Second Reassignment Letter to deliberately deprive him of the ability to appeal the Eggers Decision to the MSPB. Id. ¶¶ 51–57. After Harper's appeal was denied for lack of jurisdiction based on the Second Reassignment Letter,[8] Harper filed the administrative Grievance, which was initially investigated by Idaho State Director Ruhs and Howard Hedrick. Id. ¶¶ 58–60. However, after reading Hedrick's preliminary report exonerating Harper and identifying ethical violations by Department officials relating to the Proposal and Eggers Decision, Defendant Nedd directed Ruhs and Hedrick to stop all work investigating the Grievance and assumed authority over the Grievance himself in violation of BLM policy. Id. ¶¶ 61–69. The Department then further violated BLM policy by refusing to release Harper's

---

[8] Although Defendants do not argue that Harper could have sought judicial review of his claims with the Federal Circuit, see 5 U.S.C. § 7703, the Federal Circuit has held that its jurisdiction is co-extensive with that of the MSPB, and it therefore does not have jurisdiction to consider the merits of appeals from MSPB appeals dismissed for lack of jurisdiction. Hubbard v. Merit Sys. Prot. Bd., 319 F. App'x 912, 914 (Fed. Cir. 2009) (nonprecedential).

grievance file, depriving Harper of the ability to fully present his case.  Id. ¶¶ 71–73, 80–84; 370 DM 771 1.13.  In his Grievance Decision, Nedd failed to acknowledge the Hedrick Report and allegedly falsely stated that Harper "provided no information that contradicts the finding of the deciding official or otherwise causes me to question the 14-day suspension or reassignment to a non-LEO position."  Id. ¶¶ 76–77.  Under the CSRA and the BLM Department Manual, there is no opportunity to appeal the Grievance Decision.  370 DM 771 1.10(A)(2)(g).  Nonetheless, Harper filed the DOI Appeal which was summarily denied without any analysis of Harper's allegations. Compl. ¶¶ 107–08.  Subsequently, Graham and Nedd intervened to get BLM to rescind a job offer to Harper for a position as a LEO.  Id. ¶¶ 114–15.

Under these facts, which at this stage of the proceeding the Court accepts as true, Defendants' violations of Harper's constitutional right to due process were not related to a personnel action of the type contemplated by the CSRA, but rather were taken to deprive Harper of the exact remedial procedures Congress authorized for federal employees complaining of constitutional violations related to personnel actions.  The CSRA does not include any alternative remedies for Harper to challenge the alleged violations of his due process rights.[9]  And although the CSRA is generally

---

[9] Although Defendants do not argue that the DOI Appeal and the DOI Response to Appeal is the mechanism for review that the CSRA provides and constitutes all the process Harper was due under the CSRA, it is possible that further proceedings in this action may demonstrate exactly that.  The DOI Response to Appeal notes that the Department's Director of the Office of Human Capital has discretion to assume jurisdiction over a grievance "at any stage in the proceedings."  DOI Response to Appeal at 124 (citing 370 DM 771 1.6(A)).  However, the DOI Response to Appeal also states that Harper was not entitled to appeal the Grievance Decision, and BLM's Department Manual explicitly states that there is no mechanism to appeal a grievance decision, which becomes final when it is issued, arguably ending the

a special factor counseling against recognizing a new <u>Bivens</u> claim, Harper's allegations are distinguishable from other attempts to extend <u>Bivens</u> in the context of the CSRA because the constitutional violations of which Harper complains deprived him of the carefully considered comprehensive remedial procedures Congress intended to apply to disputes between federal employees and their superiors.  Defendants' actions cannot be said to be personnel actions if their sole purpose and effect was to obstruct the legitimate procedures for appealing personnel actions set forth in the CSRA; <u>ultra vires</u> interference with the CSRA's remedial procedures is not included in the definition of "personnel action."  <u>See</u> 5 U.S.C. § 2302(a)(2).  Although the Court is wary to extend <u>Bivens</u> under any circumstances, Defendants have not shown that the alleged interference in the grievance process was a personnel action, and Harper cannot be said to have an alternative remedy for the alleged abuse of the grievance process based on the filing and rejection of an appeal that he was not entitled to file.  Contrary to Defendants' suggestion, it is doubtful that Congress intentionally chose to leave plaintiffs in Harper's position without a remedy.

Defendants essentially posit that Congress considered the possibility that agency officials would take unauthorized and <u>ultra vires</u> actions to corrupt the remedial procedures of the CSRA in a way that violates employees' constitutional

---

grievance proceedings and removing any discretion to assume jurisdiction.  <u>Id.</u>; 370 DM 771 1.10(A)(2)(g).  At this stage of the proceedings, and in light of Defendants' failure to address this issue, the Defendants have not demonstrated that Congress considered the type of harm Harper alleges and chose to leave employees with no remedy.

rights and that Congress intentionally decided that there should be no remedy for such violations, except perhaps filing an endless series of administrative grievances to be decided by the same officials whose <u>ultra vires</u> constitutional violations necessitated the grievances in the first place.  The Court does not agree that Congress intended such a result.  The motion to dismiss Harper's <u>Bivens</u> claim is denied.

Moreover, Harper also seeks equitable relief in addition to monetary damages, which at least partially shields Harper's claim from the judicial unwillingness to extend <u>Bivens</u>.[10]  <u>See</u> <u>Stone</u>, 502 F.3d at 1038–39 (neither <u>Bivens</u> nor the CSRA precludes federal courts from granting equitable relief for constitutional violations).  In <u>Stone</u>, the Ninth Circuit followed the Supreme Court's guidance that

> where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear . . . .  We require this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.

<u>Id.</u> at 1035 (quoting <u>Webster v. Doe</u>, 486 U.S. 592, 603 (1977) (internal quotation marks omitted); <u>see also</u> <u>Whitman v. Dep't of Transportation</u>, 547 U.S. 512, 513–14 (2006) (per curiam) (in vacating and remanding to the Ninth Circuit, the Supreme Court held "The Court of Appeals was correct to say that 5 U.S.C. § 7121(a)(1) [of the CSRA] does not confer jurisdiction.  Another statute, however—a very familiar one— grants jurisdiction to the federal courts over 'all civil actions arising under the

---

[10] In Harper's Prayer for Relief, he specifically asks the Court to reinstate him as a BLM LEO, and generally requests "such other and further relief as the court may deem proper."  Compl., Prayer for Relief, ¶¶ 1, 7.  The specific and general requests for equitable relief are sufficient to invoke this Court's inherent powers to issue broad equitable relief as the case may require.  <u>See</u> <u>Porter v. Warner Holding Co.</u>, 328 U.S. 395, 398 (1946).

**OPINION AND ORDER - 25**

Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331.  The question, then, is not whether 5 U.S.C. § 7121 confers jurisdiction, but whether § 7121 (or the CSRA as a whole) removes the jurisdiction granted to the federal courts").

Interpreting <u>Webster</u>, the Ninth Circuit explained, "The power of the federal courts to grant equitable relief for constitutional violations has long been established. Thus, there is a presumed availability of federal equitable relief against threatened invasions of constitutional interests." <u>Stone</u>, 502 F.3d at 1038 (quoting <u>Mitchum v. Hurt</u>, 73 F.3d 30, 35 (3d Cir. 1995) (Alito, J.)) (internal quotation marks omitted). The Third Circuit and D.C. Circuit have also recognized federal employees' rights to bring constitutional claims for equitable relief.  <u>See</u> <u>Semper v. Gomez</u>, 747 F.3d 229, 242 (3d Cir. 2014) ("[A] federal employee who could not pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review has the right to seek equitable and declaratory relief for alleged constitutional violations in a 'federal question' action filed pursuant to § 1331"); <u>Spagnola v. Mathis</u>, 859 F.2d 223, 229 (D.C. Cir. 1988) (en banc) (per curiam) ("While we decline to extend <u>Bivens</u> remedies to [plaintiffs], we do not suggest that the CSRA precludes the exercise of federal jurisdiction over the constitutional claims of federal employees . . . altogether . . . . On the contrary, time and again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights").[11]

---

[11] There is a Circuit split on this issue, as the First, Second, and Tenth Circuits have held the CSRA precludes constitutional claims seeking equitable relief.  <u>See</u> <u>Elgin v. U.S. ep't of Treasury</u>, 641 F.3d 6, 11–13 (1st Cir. 2011); <u>Dotson v. Griesa</u>, 398 F.3d 156, 179–82 (2d Cir. 2005); <u>Lombardi v. Small Business Admin.</u>, 889 F.2d 959, 961–

In any event, this Court is bound by the clear Ninth Circuit precedent allowing federal employees to bring claims for equitable relief for violations of their constitutional rights.  See Stone, 502 F.3d at 1038–39; Allen v. Milas, 896 F.3d 1094, 1108 (9th Cir. 2018) ("After Webster, we have assumed that the courts will be open to review of constitutional claims, even if they are closed to other claims"); see also D'Angelo v. Winter, 403 F. App'x 181,181–82 (9th Cir. 2010) (nonprecedential) (plaintiff not precluded from maintaining suit for "colorable" constitutional claims for equitable relief where there is no other avenue of review).  Therefore, even if the CSRA precludes Harper's constitutional claims for money damages under Bivens, which the Court holds it does not, Harper would still have a colorable constitutional claim for equitable relief.

Finally, Graham and Nedd claim that the Bivens claim should be dismissed because they are entitled to qualified immunity.  "The doctrine of qualified immunity shields government officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Mullenix v. Luna, 577 U.S. 7, 11 (2015) (internal quotation marks omitted).  The Ninth Circuit uses a two-step inquiry to determine if defendants are entitled to raise the defense of qualified immunity.  Demaree v. Pederson, 887 F.3d 870, 878 (9th Cir. 2018).  Under step one, a court must determine whether the conduct complained of violated a constitutional right.  Green v. City and

---

62 (10th Cir. 1989).  But see Elgin, 641 F.3d at 13–18 (Stahl, J., concurring).  The Fourth, Seventh, and Eleventh Circuits have left the question open.  See Bryant v. Cheney, 924 F.2d 525, 528 (4th Cir. 1991); Paige v. Cisneros, 91 F.3d 40, 44 (7th Cir. 1996); Hardison v. Cohen, 375 F.3d 1262, 1266–67 (11th Cir. 2004).

<u>Cty. of San Francisco</u>, 751 F.3d 1039, 1051 (9th Cir. 2014).  If so, step two requires the court to determine whether "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." <u>Torres v. City of Madera</u>, 648 F.3d 1119, 1123 (9th Cir. 2011).

Defendants further contend that once they "plead" the defense of qualified immunity, the burden shifts to Harper to "prove" that the defense does not apply. Def. Br. at 13.  However, the two cases on which Defendants rely for that proposition discuss qualified immunity in the context of summary judgment motions, which generally occur after parties file pleadings and require proof to prevail.  See <u>id.</u>; <u>Isayeva v. Sacramento Sheriff's Dep't</u>, 872 F.3d 938, 946 (9th Cir. 2017); <u>Vos v. City of Newport Beach</u>, 892 F.3d 1024, 1035 (9th Cir. 2018).  But Defendants have not filed any pleading in this case, and Harper is not required to prove anything to survive a motion to dismiss.

Nedd and Graham argue that they are entitled to qualified immunity because "the conduct at issue involved normal workplace personnel actions to which a reasonable person would believe conformed to established law . . . [so] there was no reason to believe that such actions did not conform to established law." Def. Br. at 14.  Thus, Defendants effectively concede that Harper's allegations satisfy the first prong of the qualified immunity test, and as such that Harper has sufficiently alleged that Defendants' conduct violated his Fifth Amendment right to due process.[12]

---

[12] In any event, Harper's allegations are sufficient to allege a violation of his right to due process.  Harper alleges that Defendants wrongfully deprived him of the process

Therefore, the only questions the Court need address are (1) whether the right to due process was clearly established at the time of the alleged violation; and (2) whether a reasonable person would have understood Defendants' conduct to violate Harper's right to due process.  Torres, 648 F.3d at 1123.

The first inquiry is easily dealt with, as the right to due process under the Fifth Amendment has been clearly established since at least the time of the enactment of the Fifth Amendment and is regularly recognized by the Supreme Court.  See Den ex dem. Murray v. Hoboken Land & Imp. Co., 59 U.S. 272, 275–76 (1855) (recognizing the right to due process of law before being deprived of liberty or property, and noting that the concept of due process enshrined in the Fifth Amendment traces its roots and meaning back to the Magna Carta); see also Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976) (discussing historical recognition of Fifth Amendment right to due process).

Defendants contend that a reasonable person would not have understood their conduct to violate Harper's rights.  Def. Br. at 14.  The Court disagrees.  Harper alleges a multitude of regulatory and policy violations in addition to numerous actions which bear at least the appearance of impropriety.  Compl. passim.  Taken together,

---

he was due under the CSRA to injure his constitutionally protected liberty and property interests.  See Bolling v. Sharpe, 347 U.S. 497, 499–500 (1954) ("Although the Court has not assumed to define 'liberty' with any great precision, that term is not confined to mere freedom from bodily restraint.  Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective"); see also Webster, 486 U.S. at 601–03 (finding colorable liberty and property interests under the Due Process clause of the Fifth Amendment); D'Angelo, 403 F. App'x at 181–82 (plaintiff had property interest in continued employment via Navy regulations sufficient to state a claim for violation of his Fifth Amendment due process rights).

**OPINION AND ORDER - 29**

Harper's allegations amount to a coordinated plot to vitiate Harper's protections under the Fifth Amendment and the CSRA for the purpose of permanently depriving him of his ability to be employed in his chosen profession.  At this stage in the proceedings, the Court concludes that a reasonable person would not have understood Defendants' alleged actions to conform with established law.  Defendants are not entitled to dismiss Harper's <u>Bivens claim</u> on the grounds of qualified immunity.

###    B.    Tort Claims

Harper's Complaint contains three causes of action alleging tort claims: defamation <u>per se</u> (Count II), negligent supervision (Count III), and negligent training (Count IV) (collectively, the "Tort Claims").[13]  Compl. ¶¶ 127–49.  Defendants move to dismiss the Tort Claims on three grounds.  First, Defendants assert that the Court lacks subject matter jurisdiction over the Tort Claims because Harper failed to exhaust his administrative remedies, a prerequisite to jurisdiction under the FTCA.  Def. Br. at 7–8.  Second, Defendants assert that the Tort Claims are excluded from the claims available under the FTCA.  <u>Id.</u>  Finally, Defendants argue that even if the Court does have jurisdiction, Harper's complaint does not contain sufficient facts to state a claim for any of the Tort Claims.  <u>Id.</u> at 8–9.  For the following reasons,

---

[13] The Complaint does not specifically state that the Tort Claims are being alleged under the FTCA; however, Harper argues in his opposition that the negligent supervision and negligent training claims (the "FTCA Claims") are proper under the FTCA.  Pl. Br. at 9–14.  The Court interprets Harper's Complaint as alleging the FTCA Claims pursuant to the FTCA.  <u>See</u> <u>Fontana v. Haskin</u>, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief").

Harper's FTCA Claims are dismissed for lack of subject matter jurisdiction, and Defendants' motion to dismiss Harper's defamation per se claim is denied.

### 1.    FTCA Claims

The United States and its agencies are immune from suit absent a specific waiver of sovereign immunity.  F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  Sovereign immunity is a jurisdictional issue.  Id.  The FTCA functions as a limited waiver of sovereign immunity by the United States and its agencies because, pursuant to the FTCA, the United States and its agencies consent to be sued for certain tort claims. Molzof v. United States, 502 U.S. 301, 305 (1992); see also 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances").  Pursuant to 28 U.S.C. § 1346(b)(1), Congress granted district courts jurisdiction over actions brought pursuant to the FTCA:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. § 1346(b)(1).  However, to meet the jurisdictional requirements of the FTCA, a plaintiff must first present the claim to the appropriate agency and receive a final denial in writing sent by certified or registered mail.  Id. § 2675(a).  "The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the

**OPINION AND ORDER - 31**

claim." Id.  A claim is considered presented to a federal agency when the agency receives from the claimant or his legal representative "written notification of an incident, accompanied by a claim for monetary damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident."  28 C.F.R. § 14.2(a).  Moreover, an action brought under the FTCA "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency."  28 U.S.C. § 2675(b).  The Ninth Circuit has interpreted § 2675(b) as jurisdictional.  Blair v. I.R.S., 304 F.3d 861, 865 (9th Cir. 2002).

Here, Harper contends that the DOI Appeal served as his presentation of his FTCA Claims to the Department because it alleged the same facts as Harper alleges in the Complaint.[14]  Compl. ¶¶ 107, passim.; Pl. Br. at 11.  Defendants contend that the DOI Appeal does not satisfy the requirements of 28 U.S.C. § 2675 and 28 C.F.R. § 14.2(a).  See Def. Reply at 5 ("Plaintiff has not provided any evidence that executed [sic] a Standard Form 95 or that he has asserted a claim for a sum certain").  Because the Complaint did not sufficiently describe the DOI Appeal and Harper did not make any substantive arguments about how it satisfies the FTCA's jurisdictional requirements, Harper failed to meet his burden to plead subject matter jurisdiction.  Moreover, to the extent that Defendants' reference to "evidence" signifies a factual challenge to Harper's allegation that the DOI Appeal was sufficient to exhaust his administrative remedies, the Court is permitted to review evidence outside the

---

[14] The Director of the Office of Human Capital reviewed Harper's DOI Appeal pursuant to the Department's Administrative Grievance Procedures as the office with discretionary authority to assume jurisdiction at any stage in the proceedings.  See Response to DOI Appeal; 370 DM 771 1.6(A).

OPINION AND ORDER - 32

Complaint.  White, 227 F.3d at 1242.  The DOI Appeal, which Harper submitted as Exhibit 5 to the Harper Decl., see ECF No. 19-2, 34–45, requests, inter alia, "[r]estoration of all leave and wages and financial losses after March 27, 2019 due to administrative suspension and reassignment."  DOI Appeal at 45.

Harper's claim for damages as asserted in the DOI Appeal fails to meet the jurisdictional requirements of 28 U.S.C. § 2675(b).  Section 2675(b) and 28 C.F.R. § 14.2(a) require that Harper's claim to the Department set forth a specific dollar amount of damages.  See Blair, 866–67; see also Avril v. United States, 461 F.2d 1090, 1091 (9th Cir. 1972).  Therefore, Defendants' motion to dismiss the FTCA Claims is granted.  However, to the extent Harper still has time to present his FTCA Claims to the Department under 28 U.S.C. §§ 2401(b) and 2679(d)(5), he may seek leave to amend to re-plead the FTCA Claims in the future.  Count III (negligent supervision) and Count IV (negligent training) are dismissed without prejudice.[15]

### 2.  **Defamation Per Se**

#### a.  **Subject Matter Jurisdiction**

Defendants also move to dismiss Count II (defamation per se) for lack of subject matter jurisdiction on the grounds that defamation is excluded from the FTCA and therefore the United States did not waive sovereign immunity for defamation claims.  Def. Br. at 7–8.  The FTCA excludes "any claim arising out of . . . libel [or] slander." 28 U.S.C. § 2680(h).  Defendants somewhat confusingly argue that Harper did not

---

[15] The Court does not reach Defendants' arguments that the FTCA Claims fall under the FTCA's discretionary function exclusion set forth in 28 U.S.C. § 2680(a), or that Harper's FTCA Claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  See Def. Br. at 8–9.

**OPINION AND ORDER - 33**

assert his defamation claim under the FTCA because he "likely knew" that it would be precluded by 28 U.S.C. § 2680(h), but then argue that the defamation claim should be dismissed because it is excluded by the FTCA.  Def. Br. at 7.

Harper's claim for defamation would be excluded from the FTCA's waiver of sovereign immunity to the extent it is alleged under the FTCA.  <u>Kaiser v. Blue Cross</u>, 347 F.3d 1107, 1117 (9th Cir. 2003) ("The [FTCA] does not permit suits against the United States for defamation") (internal citations omitted); <u>see also</u> <u>McLachlan v. Bell</u>, 261 F.3d 908, 912 (9th Cir. 2001) (claims for defamation claim fall within the 28 U.S.C. § 2680(h) exclusion).  However, as Defendants note, Harper does not allege his defamation claim under the FTCA.  Pl. Br. at 13–14; Def. Br. at 7.  Harper asserts the defamation claim against Graham and Nedd individually.  Pl. Br. at 13–14.  Moreover, Harper argues that Graham and Nedd acted outside the scope of their employment in allegedly defaming Harper.  <u>Id.</u>  Therefore, Harper is not presently suing the United States for defamation, so Count II is not excluded by the FTCA.

Although Defendants claim that the FTCA prohibits claims against federal employees acting within the scope of their employment, employees who are sued in their individual capacities must first comply with the Federal Employees Liability Reform and Tort Compensation Act (the "Westfall Act") to garner that protection.  <u>See</u> 28 U.S.C. § 2679.  The Westfall Act provides

> The remedy against the United States provided by [the FTCA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . . Any other civil action or proceeding

for money damages arising out of or relating to the same subject matter against the employee . . . is precluded without regard to when the act or omission occurred.

Id. § 2679(b)(1).  However, the Westfall Act sets forth a procedure pursuant to which government employees who are sued in their individual capacities can attempt to substitute the United States as the defendant.  Id. § 2679(c)–(d).  For the United States to be substituted as the proper defendant and the FTCA to apply, the Westfall Act requires, inter alia, either the Attorney General or the district court to certify that the employee was acting within the scope of his employment at the time the alleged tort occurred.  Id. § 2679(d)(1), (d)(3); see also Meridian Int'l Logistics, Inc. v. United States, 939 F.2d 740, 743–45 (9th Cir. 1991); Arthur v. United States By and Through Veterans Admin., 45 F.3d 292, 295–96 (9th Cir. 1995).  Here, however, neither Graham nor Nedd asserts that the Attorney General has certified that he was acting within the scope of his employment at the time he allegedly made the defamatory statements.  Moreover, neither Graham nor Nedd has petitioned this Court to make that certification.[16]  Thus, the Court has subject matter jurisdiction over Harper's claim for defamation per se against Graham and Nedd under Idaho common law.[17]

---

[16] Defendants refer to the protection of the FTCA for employees acting within the scope of their employment, see Def. Br. 7 (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2004)), and note in a heading that Harper purportedly does not address the scope issue.  See Def. Reply at 5.  But Defendants do not explain how Graham's and Nedd's  alleged conduct falls within the scope of their employment.  Harper, on the other hand, invokes Department policies and regulations to explain why Graham's and Nedd's alleged actions fell outside the scope of their employment.  See Pl. Br. at 13–14.

[17] The Court will exercise supplemental jurisdiction over this Idaho state common law claim pursuant to 28 U.S.C. § 1367.  See Acri v. Varian Associates, Inc., 114 F.3d

**OPINION AND ORDER - 35**

b.      Rule 12(b)(6) Motion to Dismiss

To state a claim for defamation, a plaintiff must allege "that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication." Ice Castles, LLC v. LaBelle Lake Ice Palace, LLC, 409 F. Supp. 3d 912, 920 (D. Idaho Aug. 12, 2019) (citing Clark v. The Spokesman-Review, 144 Idaho 427, 163 P.3d 216, 219 (Idaho 2007)). "Statements are defamatory per se if they impute to the plaintiff 1) a criminal offense; 2) a loathsome disease; 3) a matter incompatible with his trade, business, profession, or office; or 4) serious sexual misconduct." Sadid v. Vailas, 943 F. Supp. 2d 1125, 1134–35 (D. Idaho May 2, 2013) (citing Yoakum v. Hartford Fire Ins. Co., 129 Idaho 171, 923 P.2d 416, 425 (Idaho 1996)). A plaintiff alleging defamation per se need not plead specific damages, as general damages are assumed. Id. at 1134.

In support of his claim for defamation per se, Harper alleges that Graham and Nedd knowingly communicated false information that impugned his honesty, integrity, virtue, or reputation. Compl. ¶¶ 128–31. Although it is not completely clear which communications Harper alleges are defamatory, the Court infers that Harper alleges that statements that he lacked candor during his interview with SA Shillingford are defamatory. See Pl. Br. at 15–16. In light of the Hedrick Report and Harper's factual allegations relating to his interview with SA Shillingford, Harper

999, 1000 (9th Cir. 1997) (en banc) ("[W]hen there is power to hear [a] case under § 1367(a), the district court may exercise supplemental jurisdiction over state law claims without sua sponte addressing whether it should be declined under § 1367(c)." (footnotes omitted)).

has sufficiently pleaded that the alleged statements that Harper lacked candor were false. The false statements impute to Harper "a matter incompatible with his . . . profession or office," and therefore meet the requirement for defamation <u>per se</u>. <u>Sadid</u>, 943 F. Supp. 2d at 1134–35. Moreover, although Defendants assert that Harper's Complaint is not specific enough to state a claim for defamation, Defendants do not cite any law in support of their position, and they therefore have not met their burden on this motion. <u>See</u> Def. Br. at 8; Def. Reply at 6; <u>see also</u> <u>U.S. ex rel. Putnam v. Eastern Idaho Regional Medical Center</u>, 2008 WL 4498812, at *1 (D. Idaho Oct. 3, 2008) (unreported) ("While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them").

Therefore, the Court finds that Harper has pleaded facts sufficient to state a claim for defamation <u>per se</u>. Harper may proceed with his defamation <u>per se</u> claim against Graham and Nedd; however, to the extent Harper attempts to assert defamation claims against any of the other defendants, those claims are dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part, and it is

**ORDERED** that Defendants' motion is GRANTED in part and DENIED in part; and it is further

**ORDERED** that Defendants' motion to dismiss Count I of Harper's Complaint for violations of Harper's Fifth Amendment right to due process under <u>Bivens</u> is DENIED; and it is further

**ORDERED** that Defendants' motion to dismiss Count II of Harper's Complaint for defamation <u>per se</u> is DENIED; and it is further

**ORDERED** that Defendants' motion to dismiss Count III of Harper's Complaint for negligent supervision is GRANTED and Count III is dismissed <u>without prejudice</u>; and it is further

**ORDERED** that Defendants' motion to dismiss Count IV of Harper's Complaint for negligent training is GRANTED and Count IV is dismissed <u>without prejudice</u>; and it is further

**ORDERED** that Defendants shall file an answer to the Complaint within 20 days of the date of this Opinion and Order; and it is further

**ORDERED** that the status conference scheduled for Thursday, November 18, 2021, is adjourned until Tuesday, January 11, 2022, at 11:00 a.m. M.S.T.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated:        November 12, 2021
              New York, New York

---

\* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION AND ORDER - 38**